The document below is hereby signed.

Signed: September 29, 2020



_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re ) | |
| ) | |
| JEANNIE QUINTEROS ) | Case No. 19-00195 |
| ) | (Chapter 7) |
| Debtor. ) | |
| ) | |
| ─────────────────────── ) | |
| ) | |
| JEANNIE QUINTEROS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. |
| ) | 19-10013 |
| CAPITAL VENTURES ) | |
| INTERNATIONAL LLC, _et al.,_ ) | Not for publication in |
| ) | West's Bankruptcy Reporter. |
| Defendants. ) | |

MEMORANDUM DECISION GRANTING MOTION TO DISMISS
ADVERSARY PROCEEDING, OR IN THE ALTERNATIVE MOTION FOR
SUMMARY JUDGMENT, FILED BY CAPITAL VENTURES INTERNATIONAL
LLC, NICHOLAS LAMPARIELLO, AND NATIONAL HOME INVESTORS, LLC

Capital Ventures International, LLC ("Capital Ventures"),

Nicholas Lampariello, and National Home Investors, LLC ("National

Home Investors") (collectively, the "Movants") have filed a

motion (Dkt. No. 68) to dismiss the _Amended Complaint_ (Dkt. No.

64) filed by the plaintiff, Jeannie Quinteros ("Quinteros") or in

the alternative for summary judgment.  The motion will be

granted.

I

SUMMARY

Quinteros has an ownership interest in real property
located in Watson, Florida (the "Property").  In 2006, Quinteros
and her then-husband, Ronnie Quinteros ("Ronnie"), issued a *Note*
to CitiMortgage, Inc. secured by a mortgage (the "*Mortgage*")
against the Property.  Quinteros's own evidence establishes that
National Home Investors and then Capital Ventures became
assignees of the *Mortgage* and the *Note*.  Any doubts as to the
right of Capital Ventures (the current assignee of the rights
under the *Note* and *Mortgage*) to enforce the *Note* and the *Mortgage*
against Quinteros's interest in the Property were erased by the
*Loan Modification Agreement* and the *Settlement Agreement and
Release* executed by Capital Ventures and Quinteros in 2015 which
acknowledged that Capital Ventures holds the *Note* secured by the
*Mortgage*.

Quinteros makes conclusory allegations that she was led by
fraud to execute those documents in 2015.  However, Quinteros's
*Amended Complaint* has not pled fraud with other than conclusory
allegations and has not pled fraud with particularity as required
by Fed. R. Civ. P. 9(b).

In any event, the material facts not in genuine dispute show
that there was no fraud and that on this issue and any other

2

issues the Movants are entitled to summary judgment.  Quinteros's speculation that there was fraud appears to be based on the fact that the *Note* was lost.  When she executed the *Loan Modification Agreement* and the *Settlement Agreement and Release*, Quinteros was well aware that the *Note* had been lost, as National Home Investors had disclosed to Quinteros and her counsel in a pending foreclosure action, Case No. 11-30178 in the Circuit Court for Broward County, Florida, that the *Note* had been lost.

Upon Quinteros's entering into the *Loan Modification Agreement* and the *Settlement Agreement and Release*, Case No. 11-30178 was dismissed, but with Capital Ventures' rights under the *Loan Modification Agreement* and the *Settlement Agreement and Release* kept intact.  The dismissal of Case No. 11-30178 does not bar Capital Ventures from asserting its rights to foreclose on the Property.

II

THE OBLIGATION AT ISSUE IS A NOTE
ORIGINALLY ISSUED TO CITIMORTGAGE, INC., NOT (AS PLED BY
THE *AMENDED COMPLAINT*) AN EARLIER NOTE ISSUED TO COUNTRYWIDE

The *Amended Complaint* (¶ 18) asserts that "there has been an illegal, fraudulent and willful oppressive commencement of foreclosure" against the real property located in Watson, Florida (the "Property"), in which the debtor has an ownership interest, by the Movants and others.  It is important to clarify the mortgage obligation at issue.

3

The *Amended Complaint* alleges that on or about **November 19, 2004,** Quinteros and her former husband, Ronnie Quinteros (referred to herein as "Ronnie" to distinguish him from the plaintiff, Jeannine Quinteros) entered into a consumer credit transaction with Countrywide Bank, by obtaining a $303,000 mortgage loan evidenced by a note that was secured by a mortgage on the Property.  The *Amended Complaint* inexplicably treats this Countrywide loan as the obligation sought to be enforced by Capital Ventures.[1]   However, Quinteros well knew that Capital Ventures was seeking to enforce another obligation, the CitiMortgage *Note*.

Before Quinteros filed the *Amended Complaint* on November 11, 2019, Capital Ventures had filed a motion for relief from the automatic stay in the main bankruptcy case on July 19, 2019, seeking to resume its foreclosure action in state court regarding the CitiMortgage *Note*.  Quinteros's opposition filed on July 29,

---

[1]  For example, paragraph 21 alleges:

Plaintiff/Debtor alleges that, the Real Party in Interest, Countrywide Bank, the original lender and Holder of Debtor's "Note" and "Mortgage", **DIDnNOT** [sic] endorse or deliver Debtor's "Note" and/or "Mortgage" to either Capital Ventures International, LLC, CitiMortgage, Inc, Castle Peak, National Home Investor, National Home Investments nor to Defendant, Nicholas Lampariello.

[Emphasis in original.] Note that CitiMortgage (whose loan is the actual loan the Movants have sought to enforce) is among those allegedly not assigned the Countrywide note and mortgage.

4

2019, made reference at ¶ 2 to the note executed on **November 2, 2006** (which, of course, was the CitiMortgage *Note*).  That this is the obligation that Capital Ventures seeks to enforce was made evident as well by Quinteros's own exhibits received into evidence at the hearing in the main case on September 26, 2019.[2]

Despite all this, the *Amended Complaint* persisted in asserting that the obligation at issue is the Countrywide loan, thus rendering the allegations of the *Amended Complaint* of no effect with respect the Movants' pursuit of rights under the CitiMortgage *Note*.

III

THE COURT HAS PREVIOUSLY HELD THAT THE
PLAINTIFF HAS NOT SHOWN THAT CAPITAL VENTURES
IS WRONGFULLY ATTEMPTING TO FORECLOSE ON HER PROPERTY

In granting Capital Ventures' motion in the main case for relief from the automatic stay, permitting Capital Ventures to resume its foreclosure action, Case No. CACE-16-006184 in the Circuit Court for Broward County, Florida, I have already examined many of Quinteros's contentions that Capital Ventures and National Home Investors engaged in wrongful foreclosure against the Property.  I rejected those contentions in granting

---

[2]   *See* Main Case Dkt. No. 107-2, at page 4 of 131: Debtor's Exhibit O-2 (Capital Ventures' foreclosure action complaint, Case No. CACE-16-006184 in the Circuit Court for Broward County, Florida, attaching copies of the CitiMortgage *Note* (executed in blank) and the *Mortgage*).

Capital Ventures relief from the automatic stay, and in denying

Quinteros's motion for a stay pending appeal.  Those rulings were

based largely on Quinteros's own exhibits and on matters of

public record, and in addition Capital Ventures' exhibits (as to

which there was no issue as to authenticity).  For purposes of

the Movants' request under Fed. R. Civ. P. 12(b)(6) to dismiss

the *Amended Complaint* for failure to state a claim upon which

relief can be granted, it is appropriate to consider the same

evidence.  *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d

1221, 1222 (D.C.Cir.1993) (district court may "examine matters of

public record in ruling on a Rule 12(b)(6) motion").  In any

event, the Movants are entitled to rely on the record in the

hearing as demonstrating that there are facts not in genuine

dispute warranting granting their request for summary judgment.

In seeking dismissal of the *Amended Complaint*, the Movants

have specifically relied on the court's findings in those

rulings, not by way of issue preclusion but because they reflect

facts not in genuine dispute and are supported by the evidence of

record.  Quinteros's opposition to the Movants' motion has failed

to come to grip with those findings.

In my oral decision (Main Case Dkt. No. 134 at 73-74), I

ruled:

> the Debtor contends . . . without proof . . . that the
> Note was lost, the Debtor is entitled to disregard this
> Creditor as a legitimate creditor.  The response to that
> is the parties entered into a Settlement Agreement, and

> that Settlement Agreement clearly treats this Movant,
> Capital Ventures International, LLC, as entitled to
> enforce the Note obligation at issue.  The Debtor
> contends in testimony that she was tricked and defrauded
> into executing the Settlement Agreement and Release, but
> her counsel was representing her in the negotiation of
> the Settlement Agreement  Release, and that Agreement was
> executed January the 17th, 2015, and already, in November
> 2014, as indicated by the Debtor's own exhibits, . . .
> these reflect that on October the 28th, 2014, not even as
> late as November 2014, a Motion for Leave to File Amended
> Complaint to Add Count for Lost Note.  So the Debtor,
> through counsel, was aware that there had been a lost
> Note.  Whether that affidavit complies with Florida law
> sufficiently to entitle the Note to be enforced or not is
> a question of law.
>
> The Debtor's counsel, in the face of the litigation,
> entered into the Settlement Agreement, which is Exhibit
> 7, for the Movant, and also entered into . . . on January
> the 12th, 2015, a Loan Modification Agreement with
> Capital Ventures International, LLC.  I don't see how in
> those circumstances there could have been any fraud . .
> .  and I think that the Settlement Agreement and the Loan
> Modification Agreement are binding on the Debtor.  No
> cause had been shown to rule otherwise, and I think on
> the basis of those documents, Capital Ventures
> International, LLC has shown that it has standing to
> pursue foreclosure.

I elaborated on my ruling in a *Memorandum Decision and Order
Denying Motion to Stay Pending Appeal* (Main Case Dkt. No. 66).

Below, I set forth pertinent findings in that ruling (Main
Case Dkt. No. 66), supported by the exhibits and testimony at
that hearing.  However, because the representations that National
Home Investors made to Lampariello and Capital Ventures are
hearsay, I do not rely on those representation for the truth of
their contents (although the representations would bear on any
issue of good faith, if there were one):

7

A. The *Note* and the Assignments of the *Mortgage*

The debtor primarily lives in Washington D.C., but travels periodically to Florida, and asserts in her *Motion to Stay* that the Property is her homestead. [Footnote omitted.]   The Property was the subject of a *Note* executed by the debtor's ex-husband, Ronnie Quinteros ("Ronnie"), on November 2, 2006, and secured by the *Mortgage* on the Property executed by both the debtor and Ronnie.  The debtor and Ronnie were divorced in 2009. The parties entered into a *Marriage Settlement Agreement* that provided that Ronnie would quitclaim the Property to the debtor within 10 days of the final dissolution of the marriage.  Ronnie never quitclaimed the Property to the debtor.  Despite Ronnie's obligation to quitclaim the Property to her, the debtor asserts in her *Motion to Stay* that she is a one-half owner of the Property instead of the sole owner.

As the debtor notes (*Motion to Stay* at 5-6, citing *Carpenter v. Longan*, 16 Wall. 271, 83 U.S. 271 (1872)), an assignment of a note carries the mortgage with it. *See Northup v. Reese,* 67 So. 136, 137 (1914).  As long as Capital Ventures is the assignee of the *Note*, it matters not whether the *Mortgage* was assigned to it.  However, the debtor pointed to the assignments of the *Mortgage* in questioning whether Capital Ventures is the holder of the *Note*.  Nothing in the assignments raises any doubt regarding Capital Ventures being the assignee of the *Note* or regarding its right to seek to enforce the *Note*.  The *Mortgage* underwent four assignments, with the recorded assignments establishing that Capital Ventures is the current assignee of the *Mortgage* reflected in the land records applicable to the Propery:

Assignment 1:  This first *Assignment of Mortgage* was executed on June 24, 2011, wherein Mortgage Electronic Systems, Inc. ("MERS"), as nominee for CitiMortgage, Inc., its successors and assigns, assigned the *Mortgage* to Castle Peak 2010-1 Loan Trust, whose address was c/o Acqura Loan Services.  This first *Assignment of Mortgage* was recorded on July 12, 2011.

Assignment 2:  This second *Assignment of Mortgage* was executed on August 10, 2011, wherein Castle Peak 2010-1 Loan Trust ("Castle Peak"),

whose address was care of Acura Loan Services, assigned the *Mortgage* to U.S. Bank, National Association, as Trustee of Castle Peak 2010-1 Loan Trust.   This *Assignment of Mortgage* was not recorded, and it is readily inferred that U.S. Bank elected to treat this second *Assignment of Mortgage* as no longer effective, and did not seek to claim rights under the *Note* once the next *Assignment of Mortgage* was executed.

Assignment 3:   This third *Assignment of Mortgage* was executed on June 26, 2013, wherein Castle Peak assigned the *Mortgage* to National Home Investors, LLC ("National Home Investors").   This *Assignment of Mortgage* was recorded on August 14, 2013.

Assignment 4:   This fourth *Assignment of Mortgage* was executed on November 13, 2014, wherein National Home Investors assigned the *Mortgage* to Capital Ventures.   This *Assignment of Mortgage* was recorded on January 27, 2015.

The *Note* itself was endorsed in blank by CitiMortgage. An Allonge executed by Castle Peak attached to the *Note*, provided with an *Affidavit of Lost Note* filed in the state court foreclosure proceeding brought by Capital Ventures, reflects that the *Note* was to be paid to the order of National Home Investors, and another Allonge, executed by National Home Investors, makes the *Note* payable to Capital Ventures.

B.   The *Note* Became a Lost Note

Nicolas Lampariello testified at a hearing held on September 26, 2019, regarding Capital Ventures' motion for relief from the automatic stay that Capital Ventures entered into a Mortgage Assets Purchase with National Home Investors on November 6, 2014, whereby Capital Ventures purchased several nonperforming loans, including the loan to the debtor.   National Home Investors represented to Capital Ventures that National Home Investors had the *Note*. However, prior to completion of the purchase, National Home Investors represented to Capital Ventures that it had lost the *Note*.   National Home Investors explained that in the midst of a foreclosure action National Home Investors was pursuing

against the debtor, the *Note* was lost by its attorney,
Kahane & Associates, P.A., which had held the *Note* as
coverage counsel since May 9, 2011 (which was shortly
before the first assignment of the *Mortgage*).   An
employee of Kahane & Associates, P.A., the last possessor
of the *Note* when it was lost, executed an *Affidavit of
Lost Note* on October 6, 2014, reciting that the *Note* was
delivered to Kahane & Associates, P.A. by Acqura Loan
Services on May 9, 2011. (Recall that in the assignment
of the *Mortgage* to it, Castle Peak was listed as having
an address c/o Acqura Loan Services.)  The *Affidavit of
Lost Note* then recites that the *Note* had then been lost
sometime prior to October 6, 2014.

The debtor asserts in her *Motion for Stay* that the
court abused its discretion in permitting Lampariello to
testify as to National Home Investors' representation of
the contents of the *Affidavit of Lost Note* because such
testimony is inadmissible hearsay.   That argument is
readily rejected:

- The debtor never raised an objection to the
  testimony at the hearing.   Indeed, the
  *Affidavit of Lost Note* is part of the debtor's
  own exhibits received into evidence.

- In any event, Lampariello's testimony
  regarding the representations made by National
  Home Investors was superfluous because, as is
  discussed further below, a *Settlement
  Agreement and Release* and a *Loan Modification
  Agreement*, which are binding on the debtor,
  set forth sufficient evidence that Capital
  Ventures is the party entitled to enforce the
  *Note* and is prima facie evidence that Capital
  Ventures has standing. [Footnote omitted.]

- Even if the debtor had objected to receipt of
  the affidavit into evidence, the affidavit was
  admissible to show that Capital Ventures would
  be able to file the *Affidavit of Lost Note* in
  the state court foreclosure action as a
  required predicate under Florida law (if the
  *Settlement Agreement and Release* and *Loan
  Modification Agreement* did not exist) to
  proceeding with a foreclosure action.

10

C.   Foreclosure Actions Against the Property

In 2008, CitiMortgage brought a foreclosure action against the Property.  The case was voluntarily dismissed on October 16, 2009, for lack of prosecution, due to CitiMortgage's failure to serve the debtor.

U.S. Bank [acting as trustee of Castle Peak] filed a complaint for foreclosure against the Property in state court in 2011 [Case No. 11-30178 in the Circuit Court for Broward County, Florida].  National Home Investors, to whom the *Mortgage* was assigned on June 26, 2013, was substituted in place of U.S. Bank as the plaintiff.  On October 28, 2014, with the *Note* having been lost, National Home Investors filed a motion to amend the complaint to add a claim of lost note.  The state court initially denied National Home Investors' motion to amend the complaint on October 30, 2014.  National Home Investors filed a motion to reconsider, and the state court granted the motion on November 5, 2014.

National Home Investors was represented by Kahane & Associates, P.A.   Lampariello, who is a lawyer specializing in personal injury and real estate and is the sole managing member of Capital Ventures, was substituted as counsel in place of Kahane & Associates, P.A. to represent National Home Investors on December 4, 2014.

The debtor alleged that the foreclosure action was dismissed with prejudice.  However, there is no evidence to support that.  The case was dismissed upon the debtor's executing a *Loan Modification Agreement* and a *Settlement Agreement and Release* with Capital Ventures, documents that called for the dismissal of the foreclosure action but preserved Capital Ventures' rights under the *Note* as modified by the *Loan Modification Agreement*.

Lampariello negotiated the *Settlement Agreement and Release* and the *Loan Modification Agreement* with the debtor's counsel who was representing her in the state court action.   The debtor executed the *Settlement Agreement and Release* on January 12, 2015.   Under the *Settlement Agreement and Release*, the debtor acknowledges Capital Ventures as the holder of the *Note*, and agreed to the *Loan Modification Agreement* in exchange for Capital Ventures' dismissal of the 2011 foreclosure action.  Upon

11

execution of the *Settlement Agreement and Release*, the 2011 foreclosure action was dismissed.

The *Loan Modification Agreement*, called for by the *Settlement Agreement and Release*, was executed by the debtor on January 17, 2015.  For the following reasons, more than $400,000 is owed under the *Note* as modified by the *Loan Modification Agreement* (and more than $400,000 would be owed under the *Note* if the *Loan Modification Agreement* is treated as ineffective).  The debtor does not dispute that fact.

Under the *Loan Modification Agreement*, the annual interest rate was adjusted from a 6.375% adjustable rate to a 5.25% fixed rate, and the arrearage amount of $72,461.85 was added to the unpaid principal balance of the *Note*.  However, in return for the debtor's making a payment of $6,548.38 by January 15, 2015, the unpaid principal balance was reduced to $327,988 as of February 1, 2015 (the amount owed disregarding the $72,461.85 arrearage amount).  . . . That $6,548.38 payment required to be made by January 15, 2015, included an initial monthly payment of $1,811.16, an escrow installment payment of $329.98, and a payment of 2013 taxes of $4,407.24.   The debtor made the payment of $6,548.38.  As the debtor concedes, the debtor then made no subsequent payments on the *Note*. . . .

. . .

In 2016, Capital Ventures filed a foreclosure action regarding the Property in a Florida state court [Case No. CACE-16-006184 in the Circuit Court for Broward County, Florida].  That action did not go forward when the debtor informed the state court on the day of trial that she had filed for bankruptcy.

E.   The Bankruptcy Case

The debtor filed a voluntary petition commencing this case, under Chapter 13 of the Bankruptcy Code, on March 27, 2019.  The debtor valued the property on her schedules at $379,573.00.  The debtor filed an amended Chapter 13 Plan (the "*Plan*") on July 17, 2017.  The debtor indicated under Section 4.B.vii. of the *Plan* that the liens on the Property would be paid outside of the *Plan*.  . . .

Capital Ventures filed its *Motion for Relief From Automatic Stay and Co-Debtor Stay as to Real Property at 1596 Salerno Circle, Weston, FL 33327* ("*Motion of Relief From Stay*") (Dkt. No. 54) on July 19, 2019. . . .

A hearing was held on September 26, 2019, and concluded on October 1, 2019. . . . [T]he debtor admitted at the October 1, 2019, hearing that the debtor only paid the initial $6,548.38 pursuant to the *Loan Modification Agreement*, but had made no further payments on the *Note* to either Capital Ventures, or any other party.

The debtor tried to introduce William Paatalo as an expert witness as to whether Capital Ventures held the *Note*. The court found that the issue was a legal question, to which Paatalo could not testify as an expert, but allowed Paatalo to testify as to the facts he had gathered to determine whether Capital Ventures held the *Note*. Paatalo relied on documents that the court received into evidence. In discussing those documents, his testimony wandered into his personal perceptions regarding the effects of those documents, perceptions that were mostly inadmissible speculation and impermissible opinion testimony, and that failed to cast any doubt on whether Capital Ventures is the holder of the *Note*. The documents upon which Paatalo relied do *not* establish that Capital Ventures is not entitled to enforce the *Note* and the *Mortgage.*

Paatalo testified that the only date on the *Affidavit of Lost Note* reflecting possession of the *Note* was May 9, 2011, and he treated that date as the date the *Note* was lost, because generally a lost note affidavit will give a date of when the note was last seen. Based on that deduction, he thought the *Note* was lost before any of the assignments of the *Mortgage* took place, meaning, he thought that all the Assignments were invalid, because no assignee was a possessor of the *Note* to assign it. However, Paatalo admitted that the *Note* could have been lost sometime after May 9, 2011, and before execution of the *Affidavit of Lost Note* on October 6, 2014.

Paatalo also testified that there was no evidence of reestablishment of the *Note*. However, reestablishment is what National Home Investors and Capital Ventures sought

13

to achieve via their pleadings in their respective foreclosure actions.

Paatalo also pointed out that the assignments were only transfers of the *Mortgage*, not the *Note*, and there is no custodial history of the *Note* since origination. Paatalo concluded that ownership of the *Note* starts and ends with CitiMortgage.  However, a note endorsed in blank (as this *Note* was endorsed by CitiMortgage) suffices to make the entity in possession of the note entitled to holder status to enforce the note.

Paatalo further testified that the *Note* only had an open endorsement by CitiMortgage, and the allonges provided with the *Affidavit of Lost Note* Affidavit were not part of the *Note*.  If Paatalo's view were correct, the *Note* would still be a note endorsed in blank for which the possessor would have holder status.

Moreover, Paatalo testified, the allonges do not match the assignments of the *Mortgage*: there was an unrecorded assignment to U.S. Bank as trustee, but no assignment from U.S. Bank to anyone.  As noted previously, however, it is readily inferred from the lack of recordation of the assignment to U.S. Bank that U.S. Bank elected not to be treated any longer as having any rights to enforce the *Note* and the *Mortgage*.

Paatalo further testified that there are no documents to show the assignments of the *Mortgage* were executed by individuals who were authorized to act on behalf of the purported assignors.  However, the debtor presented no evidence to show that the individuals who executed the assignments, and purported to act with authority, were *not* authorized to execute the assignments.

Finally, Paatalo testified that no evidence showed that Acqura Loan Services had the *Note* to give to Kahane & Associates, P.A..  However, the *Affidavit of Lost Note* clearly shows that Acqura Loan Services delivered the *Note* to Kahane & Associates, P.A.  How Acqura Loan Services came into possession of the *Note* would not negate that it had the *Note* to deliver.  (Moreover, recall that in the assignment of the *Mortgage* to it, Castle Peak was listed as having an address c/o Acqura Loan Services.  This suggests that Acqura Loan Services had a relationship with Castle Peak that would explain

14

how it came into possesssion of the *Note* in order to be able to deliver it to Kahane & Associates, P.A.)

IV

FAILURE OF THE AMENDED COMPLAINT
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In dismissing the original complaint, I noted:

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice." *Bell Atl. Corp v. Twombly,* 550 U.S. 544, 555 (2007). While a court will accept all of the well-pleaded factual allegations in the complaint as true, a court cannot accept inferences drawn by a plaintiff if such inferences are unsupported by the facts alleged in the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 668 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

Like the original complaint, the *Amended Complaint* is laborious, repetitive, general, and conclusory and still fails to comply with those pleading obligations.  It thus fails to state a claim upon which relief can be granted.

In addition, the *Amended Complaint*, like the original complaint, rests on conclusory allegations that the defendants engaged in fraud, but has failed to plead such fraud with particularity as required by Fed. R. Civ. P. 9(b).  That too requires dismissal of the *Amended Complaint*.

To elaborate, for the following reasons, each of the *Amended Complaint*'s eight claims fails to state a claim upon which relief

15

can be granted.

A.

The first two claims deal with the $6,548.38 Quinteros paid to Captial Ventures pursuant to the *Loan Modification Agreement*. The claims treat the Countrywide note and mortgage as the note and mortgage at issue, which as discussed earlier is simply not the case.  That renders these claims meaningless.

In any event, even if the allegations pertained to the CitiMortgage *Note* and *Mortgage,* the allegations fail to state a valid claim.  The claims rest on the assertions (*e.g.*, at ¶¶ 26, 30-32, that Lampariello filed false real estate documents concerning the Property; that "the purported loan modification was procured by fraud and hence, void ab initio;" that the Movants "falsely represented to the Debtor that they are the holder of Debtor's Note and Mortgage in due course;" that the Movants "fraudulently induced the Debtor to execute a written loan modification agreement with [Movants] as the original lenders under Plaintiff/Debtor's Note and Mortgage;" and that Capital Ventures "is not a party in interest as [it] is not the secured lien holder of the Debtor's real property and has no security interest in the debtor's real property."  However, Quinteros has pled no facts supporting these conclusory allegations of fraud and misrepresentation, and regarding Capital

16

Ventures' lacking a secured claim against the Property.[3]

The *Amended Complaint* (¶ 36) alleges that to date, "the purported loan modification has not been used to pay off any encumbrance or lien on Plaintiffs real property." *See also* ¶ 39 to the same effect. However, there is no allegation that the *Loan Modification Agreement* provided for any such payoff, and as revealed by the *Loan Modification Agreement* itself (received as Main Case Dkt. No. 107-2 at 64 as part of Quinteros's evidence in the hearing on Captial Ventures' motion for relief from the automatic stay in the main case), there was no such provision.

Next, the *Amended Complaint* alleges that the foreclosure action was dismissed with prejudice via Exhibit A. That Exhibit A was appended to the original complaint as an exhibit (Dkt. No. 2), and it states:

> 3. The parties shall comply with the terms and conditions set forth in the private settlement agreement, which is incorporated herein as if set out in full;

> 4. This court expressly retains jurisdiction over this action to enforce the terms of the settlement agreement[.]

Indeed, the *Voluntary Motion to Dismiss Case and Discharge the*

---

[3] The *Amended Complaint* alleges (¶ 29) that Ronnie was not a party to the *Loan Modification Agreement*. However, Quinteros can only assert her own claims, not claims that Ronnie might assert. Pursuant to a divorce agreement with Ronnie, Quinteros was entitled to receive the entire interest in the Property. In any event, she has at least a 50% interest in the Property. For purposes of this proceeding, it is not necessary to determine the extent of her ownership.

*Lis Pendens* attached as part of Exhibit A (Dkt. No. 2 at 2), made clear that the dismissal was conditioned "on the Court's agreement to enter an order retaining jurisdiction to enforce the terms of the private settlement agreement . . ."

 Finally, the *Amended Complaint* (¶ 58) alleges "Defendants' failure to disclose that they are not the holder of Plaintiffs [sic] Note induced Plaintiff to enter into the loan modification."  However, no facts of a non-conclusory nature are pled to show that the Movants were not the holder of the *Note*.

Plainly the *Amended Complaint*, in pursuing these first two claims, fails to comply with the obligation to state a valid claim based on non-conclusory allegations, and fails to allege fraud with particularity.  In any event, the *Loan Modification Agreement* included Quinteros's release of all claims.

B.

The third claim is one for intentional misrepresentation. Like the earlier claims, it treats the pertinent note and mortgage as the Countrywide note and mortgage (see ¶ 102), thus rendering the remaining allegations meaningless.

In any event, even if the allegations pertained to the CitiMortgage *Note* and *Mortgage,* the allegations fail to state a valid claim.  Repeating allegations already made as to the first two claims, this third claim rests on repeated allegations that the Movants misrepresented that they were entitled to enforce the

18

*Note*.  However, the *Amended Complaint* fails to plead concrete
facts that counter the filings in the land records establishing
that the *Mortgage* was the subject of assignments to National Home
Investors and then Capital Ventures, and to counter the
recitations in those assignments that the *Note* had been
transferred as well.  The allegations regarding this third claim
fail to state a claim upon which relief can be granted.

C.

The fourth claim is one for fraud in the inducement.  Like
the earlier claims, it treats the pertinent note and mortgage as
the Countrywide note and mortgage (see ¶ 102), thus rendering the
remaining allegations meaningless.

In any event, even if the allegations are treated as related
to the CitiMortgage *Note* and *Mortgage*, no valid claim has been
stated.  Repeating the allegations already made, it asserts, for
example (at ¶ 134), that on or about January 2, 2011, the Movants
(and other entities):

> misrepresented to Plaintiff that Defendants were entitled
> to exercise the power of sale provision contained in the
> Deed of Assignment and that they were entitled to execute
> a Loan Modification with Plaintiff.  In fact, Defendants
> were not entitled to do so and have no legal, equitable,
> or actual beneficial interest whatsoever in the subject
> property.

Similar misrepresentations by the Movants as of January 12, 2015,
are alleged (see ¶ 135).

Once again, the *Amended Complaint* fails to plead concrete

19

facts that counter the filings in the land records establishing that the *Mortgage* was the subject of assignments to National Home Investors and then Capital Ventures, and to counter the recitations in those assignments that the *Note* had been transferred as well.  By failing the plead how these representations were false, the *Amended Complaint* fails to plead fraud with particularity as required by Rule 9(b).  *See Anderson v. USAA Cas. Ins. Co.,* 221 F.R.D. 250,253 (D.D.C. 2004) ("Rule 9(b) requires that the pleader provide the 'who, what, when, where, and how' with respect to the circumstances of the fraud" to sufficiently state a claim.").

D.

The fifth claim seeks to cancel the *Loan Modification Agreement* as a sham and to recover damages.  It rests on the same allegations as the previous claims.  Like them, this fifth claim fails to state a claim upon which relief can be granted.

E.

The sixth, seventh, and eighth claims seek to quiet title, to declare that the Movants have no rights against the Property, and to enjoin the Movants from asserting any rights against the Property.  They rest on the prior allegations of the *Amended Complaint* which fail to suffice to establish that the claims

20

asserted by the Movants against the Property are invalid.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

The foregoing demonstrates that the *Amended Complaint* must be dismissed for failure to state a claim upon which relief can be granted.

V

IN THE ALTERNATIVE, SUMMARY JUDGMENT IS APPROPRIATE

Capital Ventures has moved in the alternative for summary judgment.  Pursuant to Fed. R. Civ. P. 56, Capital Ventures is entitled to summary judgment.

A.

CAPITAL VENTURES STATEMENT OF MATERIAL FACTS

After incorporating the court's recitation of facts in its *Memorandum Decision and Order Denying Motion to Stay* (which are quoted above), Capital Ventures' motion set forth the following additional statement of material facts (referring to itself as "CVI" and National Home Investors as "NHI") as to which it asserted there is no genuine dispute:

> 1.   On November 2, 2006, Ronnie Quinteros ("Co-Debtor") executed an adjustable rate Note (the "Note"), that was secured by a Mortgage (the "Mortgage") on the Subject Property.

> 2.   The lien created by the Mortgage was perfected by recording the Mortgage in the Public Records of Broward County, Florida on or about November 14, 2006, Instrument #106594614, Book 43110 at Page 1071.

21

. . .[4]

7. On or about June 26, 2013, NHI acquired the Note and Mortgage from Castle Peak 2010-1 Loan Trust.  See Affidavit of Derek Phelps, attached hereto as Exhibit 1, ¶ 8.

8.  On or about November 6, 2014, CVI purchased several loans from NHI including the loan that related to the Note and the Mortgage on the Subject Property. See Ex. 1, ¶ 13.  See also Affidavit of Nicolas Lampariello, Esq. attached hereto as Exhibit 2, ¶ 7.

9. After selling their interest in the Note and Mortgage to CVI, NHI had no further interest in the Subject Property. See Ex. 1, ¶ 19.

10. After purchasing the loan, Lampariello substituted himself as counsel in place of counsel for NHI in the Prior Foreclosure Case. See Ex. 2, ¶ 10.

11. After acquiring the Note and Mortgage, Madison Management Services, LLC acted as servicer for the Note and Mortgage. See Ex. 2, ¶ 12.

12. Lampariello, on behalf of CVI, negotiated a Loan Modification Agreement (the "Loan Modification") and a Settlement Agreement and Release (the "Settlement Agreement") to resolve the Prior Foreclosure Case. See Complaint, ¶ 18, Ex. 2, ¶¶ 13-16, and List Stay Opposition, ¶ 3.

13. The Settlement Agreement expressly states that, "CVI is the owner and holder of a certain promissory note in the original principal amount of $328,000.00 (the 'Note') . . ." Further, the Settlement Agreement states, "CVI and [Plaintiff] desires to settle and compromise any and all disputes, controversies, claims and actions between and among them arising out of and related to the Loan and the Loan Documents [FOOTNOTE: In the Settlement Agreement, Loan Documents is defined as, "the Note, the Mortgage, and other documents and instruments executed and delivered in connection with the Loan . . ."] . . ."

---

[4] Paragraphs 3 through 6 relate to Ronnie's obligation to transfer his interest in the Property to Quinteros.  I do not recite them because the extent of Quinteros's interest (whether it is 50% or 100%) does not  matter.

14. After execution of the Loan Modification and Settlement Agreement, the Prior Foreclosure Case was dismissed. See Amended Complaint, ¶ 48, Plaintiff's Exhibit A attached to the Complaint and Ex. 2, ¶ 22. The order dismissing the Prior Foreclosure Case required that, "The parties shall comply with the terms and conditions set forth in the private settlement agreement, [FOOTNOTE: The private settlement agreement referenced in the Dismissal Order was the Loan Modification and Settlement Agreement.] which is incorporated herein as if set out in full."

15. After execution of the Loan Modification, the Plaintiff tendered the required $6,548.38. See Amended Complaint, ¶ 5

16. The Plaintiff failed to make any further payments on the Note or Mortgage to CVI. See Ex. 2, ¶ 27.

17. Upon default under the Loan Modification and Settlement Agreement, CVI filed the Current Foreclosure Case. See Ex.

18. The Current Foreclosure Case was eventually stayed by the Plaintiff's instant Chapter 13 bankruptcy case, filed on March 27, 2019 (the "Petition Date").

As explained next, Quinteros has not controverted these facts in a statement of genuine issues filed in opposition to the Movants' motion. Accordingly, they are treated as admitted facts pursuant to DCt.LCvR 7(h) (which is made applicable by LBR 7056-1).

B.

QUINTEROS HAS NOT DEMONSTRATED THAT THERE EXIST GENUINE ISSUES OF MATERIAL FACTS NECESSARY TO BE LITIGATED

On February 18, 2020, the court issued an order (Dkt. No. 79) warning Quinteros of her obligations in opposing Capital Ventures' request for summary judgment to "heed the applicable rules regarding summary judgment, including Federal Rule of Civil

Procedure 56 and Local Bankruptcy Rule 7056-1," and attached
copies of those rules, including the terms of DCt.LCvR 7(h)
(which is made applicable by LBR 7056-1).  Under Dct.LCvR
7(h)(1), Quinteros was required to file "a separate concise
statement of genuine issues setting forth all material facts as
to which it is contended there exists a genuine issue necessary
to be litigated, which shall include references to the parts of
the record relied on to support the statement."  The order
included this warning:

> The debtor is warned that under LBR 7056-1, "[i]n
> determining a motion for summary judgment, the court may
> assume that facts identified by the moving party in its
> statement of material facts are admitted, unless such a
> fact is controverted in the statement of genuine issues
> filed in opposition to the motion.["]  The defendants'
> statement of material facts not in genuine dispute is
> included in the memorandum of law accompanying their
> Motion, Dkt. No. 68-2 at 4-7, and that is the statement
> of facts that must be controverted in order that the
> court may not assume under LBR 7056-1 that the stated
> facts are admitted.

Quinteros did not respond to each of Capital Ventures' enumerated
material facts not in genuine dispute.  As noted already, I thus
treat those facts as admitted under DCt.LCvR 7(h) .

Instead, Quinteros filed a *Statement of Material Facts as to
Which There Is No Genuine Issue to Be Tried* (Dkt. No. 83-1 at
pages 1 to 6), which failed to demonstrate that there are genuine
issues of material fact necessary to be litigated.  The *Statement
of Material Facts* recites:

1.   There are genuine issues of material fact to be

24

Tried pertaining to the purported assignments of the property:

a) Countrywide is the original lender, which did not assign a mortgage or note to CitiMortgage.

b) There is a satisfaction of Mortgage on the subject property after the alleged transaction with CitiMortgage.

c) There are breaks in the chain of title

d) Capital Ventures International, LLC, Nicolas Lampariello, and National Home Investors, LLC, and its privies were never in possession of a purported note of the subject property.

e.) Capital Ventures International, LLC, Nicolas Lampariello, and National Home Investors, LLC, and its privies are not the real party in interest and do not have a secured interest in the subject property.

Capital Ventures International, LLC, Nicolas Lampariello, and National Home Investors, LLC, are not the Original Lenders of Debtor/Plaintiffs Note and Mortgage. (¶ Adv. Compl.)

2.  Nicolas Lampariello set up sham corporations to defraud Plaintiff/Debtor. (¶ Adv. Compl.)

3.  There is genuine Issue of material fact to be Tried pertaining to reestablishment of the lost Note which precludes the entry of summary judgment. Capital Ventures International, LLC, Nicolas Lampariello, and National Home Investors, LLC has admitted that the instant case involves a lost Note. Defendants have admitted the Note was lost by "a predecessor-ininterest" during a prior foreclosure case.  Plaintiff/Debtor contends there is dispute regarding existence of lost Note that has not been resolved.

4.  There is genuine Issue of material fact to be Tried pertaining to he [sic] issue of whether Capital Ventures International, LLC, Nicolas Lampariello, or National Home Investors, LLC is the holder of the Note with the right to enforce it.

5.  The purported Loan Modification was procured by

Fraud. . (¶ Adv. Compl.)

6. Capital Ventures International, LLC, Nicolas Lampariello, and National Home Investors, LLC are conduits and one of the same to which a judgment with prejudiced [sic] had been entered against them in the court of competent jurisdiction in the State of Florida. Exhibit D.

7. The Loan Modification Agreement (hereafter "LMA") attached as Exhibit "F" to the MSJ is dated January 8, 2015, which is four (4) years after the filing of the prior foreclosure action filed by U.S. Bank National Association as Trustee of Castle Peak 2010-1 Loan Trust as Plaintiff has admitted in its MSJ. Plaintiff has also admitted that the Note was lost during the course of that action, without specifying the date of the loss.  The LMA makes no mention of the Note being lost; a copy of the [lost] Note is not attached to the LMA; and the original Lender is not even mentioned in the LMA.  Paragraph 8 of the LMA references a "Deed of Trust".  No such Deed of Trust was executed by anyone connected to this case as Florida is not a "trust deed" state. The "consumer's initials" are not on the LMA, and there is no evidence that the (otherwise unidentified) original Lender consented to the LMA or that Plaintiff in fact assumed the obligations of the original Lender. These issues thus present the specter that Jeannie Quinteros may be subjected to double liability.

8. Plaintiff/Debtor First Set of Discovery Instruments, i.e., Request for Production, Special Interrogatories, and Request for Admissions illuminate that plethora of disputed facts that must be resoled [sic] through compelling Defendants to respond the Plaintiffs Discovery herein attached as Exhibit A, Exhibit B, and Exhibit C, collectively, will uncover evidence of how and when Defendant, Nicolas Lampariello set-up sham corporations to defraud the Debtor/Plaintiff, Jeannie Quinteros.

9. There is genuine Issue of material fact to be Tried pertaining to whether the original Lender and Real Party in Interest assigned Capital Ventures International, LLC, Nicolas Lampariello, or National Home Investors, LLC the right to Plaintiff/Debtor's Note and Mortgage.

26

10.   There is genuine Issue of material fact to be Tried as to whether Capital Ventures International, LLC, Nicolas Lampariello, or National Home Investors, LLC has pecuniary Interest in Plaintiffs Note and Mortgage.

11.   There is genuine Issue of material fact to be Tried pertaining to whether Ronnie Quinteros and other persons who have beneficial interests in the subject real property endorsed the purported loan modification  that manufactured by Capital Ventures International, LLC, Nicolas Lampariello, and National Home Investors, LLC.

12.   There is genuine Issue of material fact to be Tried pertaining to whether Capital Ventures International, LLC, Nicolas Lampariello, and National Home Investors, LLC obtained assignment of Mortgage from the original Lender.

13.   There is genuine Issue of material fact to be Tried pertaining to whether the owners of the subject property is indebted to Capital Ventures International, LLC, Nicolas Lampariello, or National Home Investors, LLC.

This is hardly "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement" as required by DCt.LCvR 7(h)(1) (made applicable by LBR 7056-1).

However, I will address each of these to demonstrate why they fail to establish facts that are material or, if material, as to which there is a genuine issue such as to warrant denying the motion for summary judgment.

### Paragraph 1

Quinteros's paragraph 1 is a mixture of contentions.

27

*Subparagraph a.*  As to the contention in paragraph 1 that "a) Countrywide is the original lender, which did not assign a mortgage or note to CitiMortgage" this is wholly irrelevant.  The *Note* at issue was one issued to CitiMortgage, not Countrywide.

*Subparagraph b.*  As to the contention that "b) There is a satisfaction of Mortgage on the subject property after the alleged transaction with CitiMortgage" Quinteros has failed to supply any evidence of this, and Quinteros's own affidavit attaches a copy of a satisfaction referring to the Countrywide mortgage of 2004, not the *Mortgage* issued in favor of CitiMortgage in 2006.

*Subparagraph c.*  As to the contention that "c) There are breaks in the chain of title," the plaintiff has failed to provide any evidence of breaks in the chain of title.

*Subparagraph d.*  As to the contention that "d) Capital Ventures International, LLC, Nicolas Lampariello, and National Home Investors, LLC, and its privies were never in possession of a purported note of the subject property," Lampariello and Capital Ventures have never contended that they were ever in possession of the *Note*.  National Home Investors' initial attorneys in the 2011 foreclosure action, Kahane & Associates, P.A., filed in that action an *Affidavit of Lost Note* reciting that the *Note* was delivered to Kahane & Associates, P.A., but the *Note* was then lost.  Quinteros claims that she was defrauded into

28

executing the *Loan Modification Agreement* and the *Settlement
Agreement and Release*.  However, that the *Note* had been lost was
disclosed on October 28, 2014, by National Home (in the 2011
foreclosure action pursued first by Castle Peak and then by
National Home), *before* Quinteros entered into the *Loan
Modification Agreement* and the *Settlement Agreement and Release*
with Capital Ventures in 2015.  This is revealed by Quinteros's
own exhibits in the lift stay hearing in the main case as set
forth below:

- Kahane & Associates, P.A., who later acted as Castle
  Peak's counsel in a foreclosure action, represents that
  on May 9, 2011, the *Note* was delivered to Kahane &
  Associates, P.A.  See Dkt. No. 107-2 at 90 *(Affidavit
  of Lost Note)*.

- CitiMortgage assigned the *Mortgage* to Castle Peak on
  June 24, 2011.  See Dkt. No. 107-2 at 55.

- On or about December 6, 2011, U.S. Bank, as trustee for
  Castle Peak, brought a foreclosure action against the
  Property, Case No. 11-30178 in the Circuit Court for
  Broward County.  See Dkt. No. 107-2 at 72-82.

- On June 26, 2013, Castle Peak assigned the *Note* and
  *Mortgage* to National Home Investors.  See Dkt. No. 107-
  2 at 56-57.

- By October 28, 2014, National Home had been substituted

29

as the plaintiff in the foreclosure action.  See Dkt.
No. 107-2 at 84.

- Kahane & Associates, P.A. acted as counsel for both the
  original plaintiff, Castle Peak, and as initial counsel
  for National Home in the foreclosure action.

- On October 28, 2014, Kahane & Associates, P.A. filed on
  National Home's behalf a Motion for Leave to File
  Amended Complaint for Lost Note.  See Dkt. No. 107-2 at
  84.

As established by Lampariello's affidavit (Adv. Pro. Dkt. No. 68-
4):

- On or about November 6, 2014, Capital Ventures
  purchased the *Note*, with the *Mortgage* assigned by
  National Home to Capital Ventures on November 13, 2014,
  and an Allonge executed by National Home on that date
  evidencing that it had transferred the *Note* to Capital
  Ventures.

- After Capital Ventures purchased the loan, Lampariello
  substituted himself in place of Kahane & Associantes,
  P.A. as counsel for National Home in the foreclosure
  action.

- Lampariello proceeded to negotiate with Quinteros (who
  had counsel representing her) the *Loan Modification
  Agreement* and the *Settlement Agreement and Release*

30

(Adv. Pro. Dkt. No. 68-4 at pages 25 to 31), which were
signed by Quinteros in January 2015 and signed by
Capital Ventures in February 2015.

*Subparagraph e.*  Subparagraph e states:

> e.) Capital Ventures International, LLC, Nicolas
> Lampariello, and National Home Investors, LLC, and its
> privies are not the real party in interest and do not
> have a secured interest in the subject property.
> Capital Ventures International, LLC, Nicolas Lampariello,
> and National Home Investors, LLC, are not the Original
> Lenders of Debtor/Plaintiffs Note and Mortgage. (¶ Adv.
> Compl.)"

The first sentence is a statement of law and unsupported by any
statements of fact.  The second sentence is a statement of a fact
consistent with the facts already set forth by the defendants
(noting that CitiMortgage was the original lender), and does not
dispute the facts upon which the defendants rely.

**Paragraph 2**

This contention that Nicolas Lampariello set up sham
corporations to defraud Plaintiff/Debtor again is a conclcusory
assertion unsupported by any evidence, and with no explanation of
how a "sham corporation" was used to defraud Quinteros who does
not dispute she owed money on the CitiMortgage *Note* at issue.

**Paragraph 3**

This contention that "there is dispute regarding existence
of lost Note that has not been resolved," fails to identify the
dispute.

### Paragraph 4

This contention that there is an issue "of whether Capital Ventures International, LLC, Nicolas Lampariello, or National Home Investors, LLC is the holder of the Note with the right to enforce it" is not a statement of fact, but a legal conclusion unsupported by the facts.

### Paragraph 5

This conclusory contention that the Loan Modification was procured by fraud is not supported by any facts.

### Paragraph 6

This contention that a judgment with prejudice was entered against the defendants is not supported by any such judgment, and, in fact, the judgment preserved Capital Ventures' rights under the *Loan Modification Agreement*.

### Paragraph 7

This long-winded statement, begins by reciting facts already relied upon by the defendants. Its remaining statements are of no consequence:

- Quinteros first asserts that the date the *Note* was lost has not been stated. However, the *Affidavit of Lost Note* represents that on May 9, 2011, the *Note* was delivered to Kahane & Associates, P.A. and then recites that the *Note* had then been lost sometime prior to October 6, 2014. See Main Case Dkt. No. 107-2 at 90-

32

91, with a second copy of the *Affidavit of Lost Note* found at Main Case Dkt. No. 107-1 at 45-46.

- Quinteros next contends that the *Loan Modification Agreement* (referred to as the LMA) "makes no mention of the Note being lost; a copy of the [lost] Note is not attached to the LMA; and the original Lender is not even mentioned in the LMA."  However, Quinteros was represented by counsel in the then-pending foreclosure action (Case No. 11-30178 in the Circuit Court for Broward County) and was advised by that counsel regarding the *Loan Modification Agreement*; accordingly, she was necessarily aware the CitiMortgage *Note* was being sued upon by National Home (who had transferred its rights in the *Note* and the *Mortgage* to Capital Ventures); that CitiMortgage was the original lender; and that the *Note* had been lost.

- Raising a claim not included in the *Amended Complaint*, Quinteros next contends in paragraph 7 that "paragraph 8 of the LMA references a 'Deed of Trust'.  No such Deed of Trust was executed by anyone connected to this case as Florida is not a 'trust deed' state."  However, the *Loan Modification Agreement* recites "The Note is secured by real and personal property collateral including, without limitation, a Mortgage (the

33

'Mortgage') recorded November 14, 2006," and only later
states:

> Lender's obligations hereunder and Consumer's
> ability to enforce this Agreement are subject
> to and conditioned upon the following: (i) the
> Deed of Trust has suffered no loss of priority
> as   against   other   liens   or   encumbrances
> recorded against the Property . . . .

The term "Deed of Trust" obviously meant the *Mortgage*.
In any event, a reference to a non-existent Deed of
Trust would obviously have not adversely affected
Quinteros.  (A non-existent Deed of Trust would not
have had any priority and thus would not have suffered
a loss of priority such as to deprive Quinteros of
rights under the *Loan Modification Agreement*.)

- Quinteros offers no explanation for why the "consumer's
  initials" not being on the *Loan Modification Agreement*
  have any consequence: she does not dispute that she
  signed the *Loan Modification Agreement.*

- Quinteros's contention that "there is no evidence that
  the (otherwise unidentified) original Lender consented
  to the LMA or that Plaintiff in fact assumed the
  obligations of the original Lender" and the contention
  that this "present the specter that Jeannie Quinteros
  may be subjected to double liability" state no relevant
  facts, and reflect a lack of candor on Quinteros's
  part.  First, the complaint in the foreclosure action

made clear that it was the CitiMortgage *Note* that was
being sued upon, and it was obvious that CitiMortgage
was the original lender.  Second, that CitiMortgage did
not consent to the *Loan Modification Agreement* is
irrelevant: having assigned the *Note* and the *Mortgage*,
CitiMortgage no longer had a role to play.  Third,
having executed the CitiMortgage *Mortgage*, Quinteros's
interest in the Property obviously was obligated
subject to the obligations under the *Note*.  Finally,
the contention that the foregoing present "the specter
that Jeannie Quinteros may be subjected to double
liability" rest on Quinteros's coyly pretending that
she did not know the CitiMortgage *Note*, which she
executed, was the basis for her having a liability that
Capital Ventures now claimed to have a right to
enforce.

**Paragraph 8**

Quinteros's contention in paragraph 8 that discovery "will
uncover evidence of how and when Defendant, Nicolas Lampariello
set-up sham corporations to defraud the Debtor/Plaintiff, Jeannie
Quinteros" fails to identify fraud in which Lampariello could
have engaged via "sham corporations" when Quinteros does not
dispute that she executed the *Mortgage* at issue, and that the
Property is subject to that obligation regardless of what

corporation holds the *Note*.

### Paragraph 9

There is not, as Quinteros asserts in paragraph 9, an issue of "whether the original Lender and Real Party in Interest assigned Capital Ventures International, LLC, Nicolas Lampariello, or National Home Investors, LLC the right to Plaintiff/Debtor's Note and Mortgage."  As recited in the court's *Memorandum Decision and Order Denying Motion to Stay* (Main Case Dkt. No. 128), the debtor's own evidence shows that there were three assignments of the *Mortgage* for the CitiMortgage *Note* in the land records, evidencing a transfer of the rights under the *Mortgage*:

- the first, from CitiMortgage to Castle Peak, was on June 24, 2011 (recorded July 12, 2011);
- the second, from Castle Peak to National Home, was on June 26, 2013 (recorded on August 14, 2013); and
- the third, from National Home to Capital Ventures, was on November 13, 2014 (recorded on January 27, 2015).

CitiMortgage endorsed the *Note* in blank.  See Main Case Dkt. No. 107-2 at 96.  CitiMortgage assigned the *Mortgage* and the *Note* to Castle Peak.  See Main Case Dkt. No. 107-2 at 72 (par. 2) and 80. Castle Peak filed a foreclosure action, Main Case Dkt. No. 107-2 at 80.  In the midst of the foreclosure action, Castle Peak assigned the *Mortgage* and the *Note* to National Home Investors.

That the *Note* was transferred is confirmed by the assignment of
the *Mortgage* to National Home wherein Castle Peak recited that
the assignment of the *Mortgage* was "TOGETHER with the note or
notes therein described and secured thereby the money due and to
become due thereon, with interest, and all rights accrued or to
accrue under said Mortgage . . ." *See* Dkt. No. 68-3 at 6.

However, as recited by the *Affidavit of Lost Note*, National
Home's counsel, Kahane & Associates, P.A., which had received the
*Note,* lost the *Note*. After National Home learned that the *Note*
had been lost, National Home made a sale of its rights under the
lost *Note* to Capital Ventures and assigned the *Mortgage* to
Capital Ventures, with a recitation in the assignment that it was
"TOGETHER with the note or notes therein described or referred
to, the money due and to become due thereon with interest, and
all rights accrued or to accrue under said Mortgage." An Allonge
executed by Castle Peak attached to the *Note*, provided with the
*Affidavit of Lost Note* filed in the state court foreclosure
proceeding brought by Capital Ventures in 2016, reflects that the
*Note* was to be paid to the order of National Home Investors, and
another Allonge, executed by National Home Investors, makes the
*Note* payable to Capital Ventures.

### Paragraph 10

Paragraph 10 makes only a conclusory assertion that there is
an issue "whether Capital Ventures International, LLC, Nicolas

Lampariello, or National Home Investors, LLC has pecuniary
Interest in Plaintiffs Note and Mortgage."  This does not state
facts.

### Paragraph 11

Paragraph 11 asserts there is an issue of "whether Ronnie
Quinteros and other persons who have beneficial interests in the
subject real property endorsed the purported loan modification
that [was] manufactured by Capital Ventures International, LLC,
Nicolas Lampariello, and National Home Investors, LLC."  That is
an irrelevant issue.  Whether individuals other than the
plaintiff, Quinteros, have an in the Property is irrelevant
because Quinteros can only sue on her own rights.

### Paragraph 12

Paragraph 12 asserts that there is an issue of "whether
Capital Ventures International, LLC, Nicolas Lampariello, and
National Home Investors, LLC obtained assignment of Mortgage from
the original Lender."  However, the "original Lender,"
CitiMortgage, assigned the *Mortgage* to Castle Peak.  After that,
CitiMortgage no longer owned the *Mortgage* to assign it.

### Paragraph 13

Paragraph 13 asserts in conclusory terms that there is an
issue of "whether the owners of the subject property is [sic]
indebted to Capital Ventures International, LLC, Nicolas
Lampariello, or National Home Investors, LLC."  This fails to

state concrete facts showing that summary judgment is
unwarranted.

C.

QUINTEROS'S ARGUMENTS ARE WITHOUT MERIT

Quinteros's 37-page brief in opposition to the Movants'
motion is rambling, repetitive, and based on frivolous arguments.

1.

Illustratively, the arguments include this argument (Dkt.
No. 83-1 at page 8 of 77):

> Capital Ventures International, LLC, Nicolas Lampariello,
> and National Home Investors, LLC and there [sic]
> predecessors claimed they are the original lender who
> financed Plaintiff's Note and Mortgage. Yet, neither
> Capital Ventures International, LLC, Nicolas Lampariello,
> nor National Home Investors, LLC proffered any evidence
> of "Mortgage Loan Application" (MLA) signed by the
> Plaintiff/Debtor or any individual who has legal and
> beneficial interest in the subject property.

The Movants have never contended that they are the original
lender: they have sought to enforce a *Note* signed by Ronnie for a
loan made to Ronnie by CitiMortgage that is secured by the
*Mortgage* on the Property executed by Quinteros and Ronnie.  Their
alleged failure to produce evidence of a Mortgage Loan
Application is irrelevant.

2.

Quinteros then argues (*id.*):

> After the Court in the State of Florida dismissed every
> claim Capital Ventures International, LLC, Nicolas
> Lampariello, and National Home Investors, LLC instituted
> against the Plaintiff/Debtor, Nicolas Lampariello,

> continue[d] to use his sham corporations to re-file
> claims against the Plaintiff notwithstanding the court
> had dismissed the case with prejudice.

The Circuit Court for Broward County never dismissed the

foreclosure action (Case No. 11-30178) with prejudice to Capital

Ventures' rights: the dismissal order expressly left those rights

intact.  This is established by this material fact recited by the

Movants that has not been disputed by Quinteros:

> 14.   After execution of the Loan Modification and
> Settlement Agreement, the Prior Foreclosure Case was
> dismissed. See Amended Complaint, ¶ 48, Plaintiff's
> Exhibit A attached to the Complaint and Ex. 2, ¶ 22.
> The order dismissing the Prior Foreclosure Case required
> that, "The parties shall comply with the terms and
> conditions set forth in the private settlement agreement,
> which is incorporated herein as if set out in full."

A footnote to this paragraph 14 recited: "The private settlement

agreement referenced in the Dismissal Order was the Loan

Modification and Settlement Agreement."

Later in her brief, Quinteros asserts that the dismissal

order bars Capital Ventures' right to sue on the *Note* as a matter

of res judicata or collateral estoppel, but those arguments

similarly are frivolous because the dismissal order left Capital

Ventures' rights under the *Loan Modification Agreement* intact.

3.

Next, Quinteros argues that there is no evidence that

Countrywide Bank, "the original lender and Holder of Debtor's

'Note' and 'Mortgage', endorsed or delivered Debtor's 'Note'

and/or 'Mortgage'" to anyone.  Dkt. No. 83-1 at 10 of 77.

However, as Quinteros well knows, Capital Ventures is seeking to
enforce the CitiMortgage *Note*, for a loan CitiMortgage made to
Ronnie, not a note issued to Countrywide for an earlier loan made
by Countrywide.

4.

Next, Quinteros asserts (Dkt. No. 83-1 at 11-12 of 77):

The purported loan modification by Capital Ventures
International, LLC was induced by Fraud, fraud in the
concealment and promulgated by preparing, filing or
recording of fraudulent real estate documents by Capital
Ventures International, LLC and its privies,
CitiMortgage, Inc, Castle Peak, National Home Investor,
National Home Investments and its other robo signers and
conduits, in contravention of Florida criminal statutes
and other Florida laws.

This assertion of "fraud in the concealment" fails to identify
any facts concealed by Capital Ventures.

5.

Next, Quinteros asserts that:

There is a genuine disputed issue of material to be
litigated that precludes the entry of summary judgment
pertaining to Defendant' fraudulent claim of lost Note
that was rejected by Florida Courts on a many occasions.
[Footnote omitted.] Moreover, Capital Ventures
International, LLC, Nicolas Lampariello, and National
Home Investors, LLC and the remaining Defendants failed
to comply with Fla. Stat. § 702.015(5) and (6) in their
fraudulent claims of "Lost Note".

Quinteros has not provided proof that in foreclosure proceedings
regarding the *Mortgage* and *Note* any court has ever rejected an
assertion that the *Note* had been lost.  In any event, Fla. Stat.
§ 702.015(5) and (6) deal with procedures for pursuing a

41

foreclosure action when a note has been lost and the holder of the note does not rely on an alternative provision establishing its right to enforce the note.[5]  This adversary proceeding is not a foreclosure action, and, in any event, in a foreclosure action Capital Ventures could rely on the *Settlement Agreement* as establishing that it is the holder of the *Note* and thus has a

---

[5]  Fla. Stat. § 702.015 provides in relevant part:

(1)  The Legislature intends that this section expedite the foreclosure process by ensuring initial disclosure of a plaintiff's status and the facts supporting that status, thereby ensuring the availability of documents necessary to the prosecution of the case.

. . .

(5)  If the plaintiff seeks to enforce a lost, destroyed, or stolen instrument, an affidavit executed under penalty of perjury must be attached to the complaint.  The affidavit must:

(a) Detail a clear chain of all endorsements, transfers, or assignments of the promissory note that is the subject of the action.

(b) Set forth facts showing that the plaintiff is entitled to enforce a lost, destroyed, or stolen instrument pursuant to s. 673.3091.  Adequate protection as required under s. 673.3091(2) shall be provided before the entry of final judgment.

(c) Include as exhibits to the affidavit such copies of the note and the allonges to the note, audit reports showing receipt of the original note, or other evidence of the acquisition, ownership, and possession of the note as may be available to the plaintiff.

(6) The court may sanction the plaintiff for failure to comply with this section.

42

right to seek foreclosure without the necessity of resorting to Fla. Stat. § 702.015 in order to sue.

The issue here (raised by the *Amended Complaint*'s request to quiet title and for declaratory relief) is whether Capital Ventures has a lien against the Property via the *Mortgage* securing the *Note*. As explained below, under Fla. Stat. § 673.3011(1), the material facts not in dispute establish that Capital Ventures has a right to enforce the *Note* without the necessity of resort to Fla. Stat. § 702.015(5) and (6).

In the *Settlement Agreement and Release*, Quinteros agreed that Capital Ventures "is the owner and holder of a certain promissory note in the original principal amount of $328,000.00 (the 'Note') evidencing a loan (the "loan") that is secured by a Mortgage dated November 2, 2006 recorded as Instrument Number 106594614 in the Public Records of Broward County, Florida (the 'Mortgage')." In light of that agreement, Capital Ventures will not be required to comply with the requirements of Fla. Stat. § 702.015(5) and (6) in order to pursue foreclosure: it will be entitled to rely on the terms of the *Settlement Agreement and Release* to establish its right to pursue foreclosure.

The *Settlement Agreement and Release* establishes that Capital Ventures is the holder of the *Note* secured by the *Mortgage*, and there is no dispute that the *Note* was signed by Ronnie and that the *Mortgage* secures the *Note.* Under Fla. Stat.

43

§ 673.3011:

Person entitled to enforce instrument.—The term "person entitled to enforce" an instrument means:

(1) The holder of the instrument;

(2) A nonholder in possession of the instrument who has the rights of a holder; or

(3) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to s. 673.3091 or s. 673.4181(4).

A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Because the *Settlement Agreement and Release* treats Capital Ventures as the holder of the *Note*, it does not matter that the *Note* has been lost.  Under  Fla. Stat. § 673.3011(1), Capital Ventures, as the holder of the *Note*, is entitled to enforce the *Note*.  As stated in *Taylor v. Deutsche Bank Nat'l Trust Co.*, 44 So.3d 618, 622 (Fla. 5th DCA 2010), "the person having standing to foreclose a note secured by a mortgage may be either the holder of the note or a nonholder in possession of the note who has the rights of a holder."  Accordingly, Capital Ventures need not resort to Fla. Stat. § 673.3011(3) and Fla. Stat. § 673.3091 to demonstrate that it is entitled to enforce the *Note*.

Even if Quinteros had not already acknowledged and agreed that Capital Ventures is the holder of the *Note*, the non-possession of the *Note* would not matter.  Capital Ventures could

44

proceed under Fla. Stat. § 673.3011(3) to demonstrate an

entitlement to enforce the *Note* under Fla. Stat. § 673.3091,

which provides:

> (1) A person not in possession of an instrument is entitled to enforce the instrument if:

>> (a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;

>> (b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and

>> (c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

> (2) A person seeking enforcement of an instrument under subsection (1) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, s. 673.3081 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

Here, the *Affidavit of Lost Note* plainly establishes that Capital

Ventures meets the requirements of § 673.3091(1).

As to § 673.3091(1)(a), the *Note* was lost sometime between

May 9, 2011, when Kahane & Associates, P.C. received the *Note*,

and October 6, 2014, when Rafael Leyva executed the *Affidavit of
Lost Note*.  It is plain, within the meaning of § 673.3091(1)(a),
that Capital Ventures "indirectly acquired ownership of the
instrument from a person who was entitled to enforce the
instrument when loss of possession occurred."  For example, if
the *Note* was lost after the assignment to Castle Peak and prior
to the assignment of the *Note* to National Home Investors, Castle
Peak (to whom the *Note* had been transferred by CitiMortgage) was
plainly entitled to enforce the *Note* "when the loss of possession
occurred."  In turn, National Home Investors "directly . . .
acquired ownership of the instrument from [Castle Peak] who was
entitled to enforce the instrument when loss of possession
occurred."  Capital Ventures, via the transfer from National Home
Investors, then "indirectly acquired ownership of the instrument
from [Castle Peak] who was entitled to enforce the instrument
when loss of possession occurred."[6]

---

[6] Kahane & Associates, P.C. obtained possession of the *Note*
in May 2011 shortly before the assignment of the *Mortgage* to
Castle Peak on June 24, 2011.  However, when Castle Peak sued to
foreclose on December 5, 2011, it appended a copy of the *Note* to
its complaint.  This suggests that the *Note* had not yet been
lost.  Even if the *Note* was lost before it was assigned to Castle
Peak, CitiMortgage would have been entitled to enforce the *Note*
when it was lost, and Castle Peak would have "directly . . .
acquired ownership of the instrument from [CitiMortgage] who was
entitled to enforce the instrument when loss of possession
occurred."  In turn, National Home Investors and Capital Ventures
would have "indirectly acquired ownership of the instrument from
[CitiMortgage] who was entitled to enforce the instrument when
loss of possession occurred."

As to § 673.3091(1)(b), the *Affidavit of Lost Note* establishes that "[t]he loss of possession was not the result of a transfer by the person or a lawful seizure."

As to § 673.3091(1)(c), the *Affidavit of Lost Note* also establishes that, within the language of that provision, National Home Investors and Capital Ventures "cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process."

The requirement in § 673.3091(2) that Capital Ventures "must prove the terms of the instrument" is not an issue here: the *Note* and the *Loan Modification Agreement* (modifying the terms of the *Note*) are in evidence.  The remainder of § 673.3091(2) deals with adequate protection as a condition to enforcement of a lost note once a creditor has a right to seek to enforce the lost note.  In this adversary proceeding, Capital Ventures is not seeking to enforce the *Note*, and there is no occasion to decide whether it has provided Quinteros adequate protection should a different holder assert rights under the *Note*.  The bankruptcy case was converted to Chapter 7, with the trustee filing a report of no distribution.  Accordingly, there is no occasion left in the

47

bankruptcy case for Capital Ventures to enforce the *Note*.[7]

6.

Quinteros complains that she has not been allowed to conduct discovery.  For two reasons, Quinteros is not entitled to pursue discovery.

First, if, as I have ruled, Quinteros has failed to state a claim upon which relief can be granted, Quinteros is not entitled to pursue discovery.  The court is not required to speculate what valid claims Quinteros might have (but failed to plead) and how discovery would be pertinent to such claims.  The Movants ought not be put to the burden of responding to discovery with respect

---

[7] The bankruptcy case has been closed (re-vesting the scheduled property of the estate in Quinteros pursuant to 11 U.S.C. § 554(c)), and then reopened pending disposition of this adversary proceeding and the disposition of the appeal regarding the lifting of the automatic stay.  Although the obligations under the Note are no longer being dealt with by a Chapter 13 plan, and enforcement of the Note will no longer have an effect on the administration of the estate, the court's subject matter jurisdiction is tested as of the filing of the adversary proceeding, and subject matter jurisdiction plainly existed under 28 U.S.C. § 1334(b) and was a core matter under 28 U.S.C. § 157(b) that this court is authorized to decide.   Thus, even though the bankruptcy case is at an end, the court may continue to hear and decide the proceeding*.  See Swinson v. Coates & Lane, Inc. (In re Swinson)*, 2004 WL 3779953 (Bankr. D.D.C., July 27, 2004), noting that in the similar circumstance of the dismissal of the bankruptcy case, the decision of whether to retain jurisdiction over the adversary proceeding "should be left to the sound discretion of the bankruptcy court ... where the adversary proceeding is pending."  *Id.* at *3 (quoting *In re Porges*, 44 F.3d 159, 162-63 (2d Cir. 1995)).  The parties have fully briefed the issues presented by the *Amended Complaint*, and under the factors listed in *Porges*, 44 F.3d at 162-63, it does not make sense to dismiss the *Amended Complaint*, without ajudicating the claims.

to a complaint that fails to state a claim upon which relief can be granted.

Second, even if the *Amended Complaint* stated some claim upon which relief can be granted, summary judgment is appropriate notwithstanding the lack of any discovery.  Quinteros has not complied with Fed. R. Civ. P. 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may allow time to take discovery. Quinteros has not filed an affidavit or declaration attempting to articulate specified reasons why discovery is essential to justify her opposition.  That is, she has not disclosed by affidavit or declaration what facts she hopes to find via discovery that would create a genuine dispute as to a material fact precluding summary judgment.

Under Rule 56(d), the failure to submit an affidavit or a declaration is fatal to Quinteros's request to delay a ruling to allow Quinteros time to take discovery.  *See CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 344–45 (6th Cir. 2011) (affirming denial of a Rule 56(d) motion where the plaintiff's affidavit "was not sworn to before a notary public nor signed under penalty of perjury pursuant to 28 U.S.C. § 1746").

Even if her opposition had been submitted as an affidavit or declaration, it would not warrant allowing her time to conduct

49

discovery.  To obtain an order allowing time to take discovery, a Rule 56(d) affidavit must "outline the particular facts [the party defending against summary judgment] intends to discover and describe why those facts are necessary to the litigation." *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020), quoting *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012).  Quinteros has made no such showing.

The discovery she has pursued, attached to her initial opposition (Dkt. No. 70-2) to the Movants' motion, in large part does not pertain to the issues presented.  Moreover, the Movants have already disclosed (in this adversary proceeding and in the hearing on the motion for relief from the automatic stay in the main case) the documents and facts upon which they rely, including the documents in the land records in Broward County, Florida, the filings in the foreclosure proceedings against Quinteros in state court, and the *Affidavit of Lost Note*. If her opposition to the request for summary judgment could be treated as an attempted Rule 56(d) filing, it would fail because it does not state "how the information [she] seeks would assist [her] in creating a genuine issue of material fact," *Jeffries v. Barr*, 965 F.3d at 856, or connect the requested discovery to the substance of her claims.  *Id.*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

Based on the foregoing, the Movants are alternatively

50

entitled to summary judgment in their favor.

VI

CONCLUSION

For all of these reasons, it is

ORDERED that the Movants' motion (Dkt. No. 66) to dismiss the *Amended Complaint* is granted; the *Amended Complaint* is dismissed with prejudice as to Capital Ventures International, LLC, Nicholas Lampariello, and National Home Investors, LLC; and, the court having already granted the other defendants' motions to dismiss, a judgment follows dismissing this adversary proceeding as to all defendants to make clear that all of the plaintiff's claims have been dismissed.

[Signed and dated above.]

Copies to: Plaintiff (by hand-mailing unless her NEF request has become effective); recipients of e-notification of orders;

Nicholas Lampariello
Lampariello Law Group
4760 W. Commercial Blvd.
Tamarac, FL 33319